IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| WEI-FUNG CHANG, | * | |
| a/k/a WEI-FUNG CHANG TINDALE, | * | |
| a/k/a WEI-FUNG CHANG-TINDALE | * | CHAPTER 13 |
|     Debtor | * | |
| | * | CASE NO. 1:07-bk-03143MDF |
| FRITZ FIRE PROTECTION | * | |
| COMPANY, INC., | * | |
|     Movant | * | |
| | * | |
| v. | * | |
| | * | |
| WEI-FUNG CHANG, | * | |
| a/k/a WEI-FUNG CHANG TINDALE, | * | |
| a/k/a WEI-FUNG CHANG-TINDALE | * | |
|     Respondent | * | |

## OPINION

This matter comes before the Court on the Motion for Relief from the Automatic Stay (the "Motion") filed by Fritz Fire Protection Company, Inc. ("Fritz"). Fritz asserts that the mechanic's lien claim filed against property owned by Wei-Fung Chang ("Debtor") and the civil action filed against Debtor and her husband were commenced post-petition and, therefore, were not subject to the automatic stay. Debtor replies that both actions are void as they were filed in state court without seeking relief from the automatic stay. For the reasons set forth below, the Court finds that Fritz's claim against the Debtor's real property and its suit against Debtor are not subject to the automatic stay under 11 U.S.C. § 362(a). Fritz may not, however, enforce its claim against property of the estate without obtaining relief from the automatic stay.[1]

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (G), (L) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters under Fed. R. Bankr. P. 7052.

## I. Procedural and Factual History

The parties filed a joint stipulation of facts that are summarized as follows. Debtor filed her Chapter 13 petition on October 3, 2007. On November 16, 2007, she filed her schedules, statements, and a Chapter 13 plan. On May 2, 2008, she filed a First Amended Plan, which was confirmed on June 12, 2008. The First Amended Plan was modified on January 16, 2009 (the "Plan"). In paragraph six, the Plan provides that "title to the Debtor's property shall revest in the Debtor upon confirmation of the Plan . . ." and in paragraph five that "[t]he automatic stay shall remain in effect until such time as the Plan is fully consummated by payments to the Trustee or otherwise modified or terminated by specific Order of the Court."

At the time she filed her bankruptcy petition, Debtor owned several parcels of real estate, including a commercial property located at 1239 Market Street, Harrisburg, Pennsylvania (the "Property"). Although the Property is owned by Debtor alone, her husband, Timothy Tindale ("Tindale"), owns and operates a bar and café located on the Property. In her schedules, Debtor reported that her household receives $1800 per month in income from real property, $7,215.75 from the operation of her husband's business and $3,285.12 from her wages. Debtor's Plan is funded by monthly payments of $1,246.90, but her reported monthly net income is only $955.18. Under the terms of the Plan, all post-petition household earnings are necessary to fund payments to the Chapter 13 trustee.

After Debtor's Plan as modified was confirmed, Fritz and Tindale, but not Debtor, entered into an agreement with Fritz for the installation of a wet fire sprinkler system at the Property (the "Agreement"). Tindale, as "Authorized Agent/Owner for 'Rebound Sports Bar & Café,'" signed the Agreement. On November 25, 2008, Fritz filed a mechanic's lien claim against

2

the Property in state court alleging that it had performed its obligations under the Agreement, but that it had not be paid for its services. On January 20, 2009, Fritz filed a civil action for breach of contract and unjust enrichment against Debtor and Tindale in state court asserting similar claims. Fritz did not seek relief from the automatic stay before filing either action.

On May 1, 2009, default judgment was entered in the contract action in the amount of $19,402.09 against Debtor and Tindale and in the same amount in the mechanic's lien action against the Property. After Fritz began execution proceedings, counsel for Debtor informed Fritz that its actions were taken in violation of the automatic stay and that satisfaction of the civil action would require Debtor to divert household income otherwise committed to the Plan. When the parties were unable to resolve the matter, Fritz filed the Motion in order to "pursue state law remedies" for its post-petition claim. Debtor filed an answer to the Motion asserting that the automatic stay barred Fritz's actions against the post-confirmation estate unless relief had been granted by this Court. Both parties have filed briefs, and the matter is ready for decision.

## II. Discussion

The question before the Court is whether the filing of a mechanic's lien against the Property and the commencement of suit against Debtor were in violation of the automatic stay under § 362(a). The resolution of this matter is determined by examining applicable sections of the Bankruptcy Code, the language of the Plan, and the order confirming the Plan.

A.    *The Automatic Stay – 11 U.S.C. § 362(a)*

Section 362(a) describes eight actions that are stayed by the filing of a bankruptcy petition. 11 U.S.C. § 362(a). Six of these provisions address actions commenced before a petition is filed or which could have been commenced pre-petition. *See* 11 U.S.C. § 362(a)(1), (2), (5),

3

(6), (7), and (8). The parties have stipulated that the claim Fritz asserts against Debtor arose after both the petition was filed and the Plan was confirmed. Therefore, under these facts, only two of the enumerated paragraphs under § 362(a) – paragraphs (3) and (4) – are relevant.

Section 362(a)(3) provides that the filing of a petition operates as a stay of: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." Implicit in these provisions is the principle that when post-petition claims are asserted, the stay applies only to actions against property of the estate and does not bar the commencement of an action against the debtor or property of the debtor. In this case, the automatic stay protects Debtor against Fritz's actions to collect a debt only as to property of the estate.[2] A post-petition creditor has the right to initiate suit against a debtor and obtain a judgment for a post-petition debt, but collection activities directed against property of the estate are barred. Accordingly, the next issue that must be addressed is whether Fritz's actions were directed toward property of the estate.

    B.    *The Chapter 13 estate*

Under all chapters of the Bankruptcy Code, the bankruptcy estate is defined under § 541(a). With some notable exceptions, this section provides that estate property consists of "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In a Chapter 13 case, property of the estate also includes:

---

[2]Debtor's Plan provides that "[t]he automatic stay shall remain in effect until such time as the Plan is fully consummated by payments to the Trustee or otherwise modified or terminated by specific Order of the Court." This provision only applies to property of the estate and does not impose an injunction broader than otherwise provided by § 362(a).

4

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Section 1306(a) expands the scope of the estate in Chapter 13 cases by including any property acquired by the debtor after the petition is filed.

The Chapter 13 estate, however, is not static. Most courts have determined that plan confirmation significantly alters the composition of the estate. *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000); *Black v. U.S. Postal Service (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997); *City of Chicago v. Fisher (In re Fisher) ("Fisher II")*, 203 B.R. 958, 960 (N.D. Ill. 1997). Section 1327(b) provides: "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). As used in §1327(b), the words "estate" and "debtor" describe separate concepts. Section 1306(b) provides that: [e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). Thus, when property of the estate vests in the debtor under § 1327(b), he acquires something more than possession, which he held at the inception of the case under § 1306(b). *Yoon v. Krick (In re Krick)*, 373 B.R. 593, 601 (Bankr. N.D. Ind. 2007). When property vests in a debtor he obtains absolute ownership and control of the property. *American General Finance, Inc. v. McKnight* (*In re McKnight)*, 136 B.R. 891, 894 (Bankr. S.D.

5

Ga. 1992); *In re O'Brien*, 181 B.R. 71, 74 (Bankr. D. Ariz. 1995).[3] As stated by Judge Lundin in his treatise on Chapter 13: "It is reasonable to conclude that the vesting of 'all of the property of the estate in the debtor' under § 1327(b) means exactly what it says – except as otherwise provided in the plan or the order of confirmation, property of the Chapter 13 estate moves out of the estate and into the possession and control of the debtor upon confirmation of the plan." 3 Keith M. Lundin, Chapter 13 Bankruptcy § 230.1, at 230-1 (3d ed. 2000 & 2004 Supp.).

Standing alone, the language of § 1327(b) is unambiguous. But as both Debtor and Fritz recognize, many courts have found the task of resolving the interplay of § 1327(b) and § 1306(a) to be difficult. If all estate property vests in the debtor at confirmation, does the estate continue to exist? If it does continue to exist, what property remains in the estate until the case is closed, dismissed, or converted? One of the first cases to undertake a comprehensive analysis of the various approaches adopted by the courts is *In re Fisher*, 198 B.R. 721 (Bankr. N.D. Ill. 1996), *rev'd on other grounds*, 203 B.R. 958 (N.D. Ill. 1997)(*"Fisher I"*). In *Fisher I*, Judge Wedoff identified three distinct understandings of the interplay of § 1306(a) and § 1327(b), which he described as "estate termination," "estate preservation," and "estate transformation." *Id*. at 724-25. Since the *Fisher I* decision, other courts have analyzed the estate termination issue using the rubrics developed by Judge Wedoff; some courts have added new categories.[4]

---

[3]One commentator has suggested that because a Chapter 13 debtor has the right to possess property of the bankruptcy estate from the inception of the case, vesting must mean "transferring absolutely" or it means "nothing at all." David Gray Carlson, *The Chapter 13 Estate and Its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233, 241 (2009).

[4]*See Telfair, supra* (observing that courts have adopted one of three models: estate termination, estate preservation, or estate transformation); *In re Rodriquez*, 421 B.R. 356 (Bankr. S.D. Tex. 2009) (observing that courts have used one of four approaches: reconciliation, estate termination, estate transformation, and estate preservation); *In re Dagen*, 386 B.R. 777 (Bankr.

6

At one extreme are courts that have held that the vesting of property in the debtor under § 1327(b) does not transfer absolute ownership to the debtor and that all property remains within the Chapter 13 estate. *Fisher I*, *supra*. Decisions adopting this approach rely on § 1306(a), which provides that property and earnings continue to enter the estate until the case is closed, dismissed, or converted to another chapter. This approach necessarily requires that a court either consider § 1327 as mere surplusage or find that "vesting" means something less than absolute ownership. *Fisher II*, 203 B.R. at 96 ("§ 1327(b) should be read to confer to the debtor property rights beyond possession if the vesting provision is to have any effect.").

On the other extreme are decisions that have found that § 1327(b) vests all property in the debtor at confirmation and that the estate ceases to exist. *In re Jones*, 420 B.R. 506 (B.A.P. 9th Cir. 2009). Cases following this approach fail to give full effect to § 1306(a), as well as to other provisions in the Bankruptcy Code, which assumes that a Chapter 13 estate exists after plan confirmation. *Cf. Id.* at 515 ("[T]he estate termination approach . . . gives effect to both Sections 1306 and 1327."). Courts criticizing this approach have held that the estate must exist post-confirmation for a Chapter 13 trustee to fulfill the duties mandated by the Code. *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 690-91 (8th Cir. 1993). These duties include: accounting for property; receiving, depositing, and investing estate funds; and accounting for all "property of the estate." *See* 11 U.S.C. § 345(a), § 704(2), § 347(a) and generally §1302(b). The

---

D. Colo. 2008) (observing that courts have adopted one of four positions on the issue of whether post-petition income ceases to be property of the estate: estate preservation, modified estate preservation, estate transformation, and estate termination); *In re Powers*, ___ B.R. ___, 2010 WL 2598233 (Bankr. N.D. Tex. June 24, 2010) (observing that courts have used one of five approaches: reconciliation, estate termination, estate transformation, estate preservation, and modified reconciliation).

7

numerous duties imposed upon the Chapter 13 trustee following the confirmation of a plan strongly suggest that the estate does not terminate at confirmation.

Between these two extremes lie several approaches in which courts have attempted to reconcile the vesting provision of § 1327(b) with the broad definition of Chapter 13 estate property found in § 1306(a). Although there are subtle variations among the decisions, they can be divided into two general categories. In one approach, all property of the estate vests in the debtor at confirmation, except property essential to the performance of the plan, regardless of whether the property was obtained before or after confirmation. In the second approach, all property of the estate becomes property of the debtor at confirmation, but the estate refills with property acquired by the debtor after confirmation until the case is closed, dismissed, or converted. *See* 3 Lundin, § 230.1, at 230-5 - 230-10, *cited in In re Krick*, 373 B.R. at 600. These approaches strive to accommodate both statutory provisions, but they pose their own conceptual and practical difficulties.

Jurisdictions finding that all property not needed to fund the plan vests in the debtor have attempted to honor the vesting provision of § 1327(b) while acknowledging the inclusive language of § 1306(a). Property essential to the performance of the Chapter 13 plan is property of the estate – all other property becomes property of the debtor. At least one court of appeals has has adopted this view. *See In re Heath* 115 F.3d at 524.[5] Attractive in concept, this approach is

---

[5]The Eleventh Circuit has adopted two approaches. In *Telfair*, the Court of Appeals held that "the plan upon confirmation returns so much of [estate property] to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair v. First Union*, 216 F.3d at 1340 (quoting *In re Heath*, 115 F.3d at 524.) In a later case, *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008), the Eleventh Circuit distinguished the facts in *Telfair*, which addressed the disposition of pre-petition assets, from situations in which new assets are acquired after confirmation. The Court held that, under the provisions of § 1306(a), post-confirmation assets

8

difficult to apply in practice. If property necessary to fund the plan is understood as a debtor's income stream, wages in an amount sufficient to fund the plan would be an asset of the estate. Other assets, such as a truck used in a debtor's business, also may be "essential" to the performance of the plan. However, the same asset no longer may be "essential" when the debtor changes jobs in the second year of the plan. How would a debtor know whether or not he could sell the truck without court approval? How would a post-confirmation secured creditor who sold debtor the truck know whether or not he could repossess the truck without first seeking relief from the automatic stay? Not only is this approach impractical, it directly runs afoul of the explicit provisions of § 1306(a), which does not provide a textual basis to distinguish earnings from other property. This approach also fails to give full effect to § 1327(b), which provides that all property of the estate vests in the debtor at confirmation, including property that may be used by a debtor when performing under a confirmed plan.

  Several courts, concerned with the absence of a statutory underpinning for categorizing post-confirmation property based upon its value to the plan, have adopted the position that all property acquired by a debtor after confirmation is estate property. Under this theory, often referred to as the "reconciliation" approach, a clear demarcation is made between pre- and post-confirmation property. "[P]roperty of the estate at the time of confirmation vests in the debtors free of any claims from the creditors. The estate does not cease to exist however, it continues to be funded by the Debtors' [sic] regular income and post-petition assets as specified in section

---

vest in the estate until the case is closed, converted, or dismissed. *Id.* at 1243.

1306(a)." *Barbosa v. Soloman*, 235 F.3d 31, 36-37 (1st Cir. 2000) (citations omitted). *Accord In re Waldron,* 536 F.3d at 1243; *Fisher II*, 203 B.R. at 962.[6]

The reconciliation approach has its weaknesses as well and does not harmonize § 1306(a) and § 1327(b) perfectly. Courts adopting this approach logically assume that property acquired after confirmation is not subject to § 1327(b) because it was not in existence at confirmation. Therefore, these courts conclude, § 1306(a) must place this property in the estate. *U.S. v. Harchar*, 371 B.R. 254, 265 (N.D. Ohio 2007) (citing cases). This theory gives effect to both sections, but it is not easily applied in every situation.[7] While it is reasonable to ask a Chapter 7 debtor to separate pre- and post-petition assets and liabilities, it is unrealistic to expect a Chapter 13 debtor, who may retain possession of his property and property of the estate for as long as five years, to keep track of how each asset is titled to ensure that he does not dispose of estate property without court approval. Theoretically, a debtor would be required to obtain court approval for every asset purchased on credit, regardless of the amount of the expenditure, unless the purchase was in the "ordinary course of business" as provided in § 363(b) as incorporated by

---

[6]Although not expressly discussed in cases adopting the reconciliation approach, in addition to property acquired by the debtor post-confirmation, property of the estate must also consist of payments paid to the Chapter 13 trustee after filing but before confirmation as mandated by § 1326(a).

[7]One commentator has described this theory as "impossibly broad," citing the following example. After a plan is confirmed, when a debtor buys a car it belongs to the bankruptcy estate. The debtor cannot sell the car without court approval even though the car he owned when he filed his petition, which he used as a trade-in, could be sold without court permission. But if he sold his old car he could not use the proceeds of the sale to purchase a new one without seeking court approval because the proceeds are property of the estate. Carlson, 17 Am. Bankr. Inst. L. Rev. at 250.

§ 1303. Few courts would want to be involved with decisions about whether debtor should purchase new clothes for his children or replace a worn-out washer.

It also is difficult to harmonize the reconciliation approach with the Code's provisions in other sections that exclude some post-confirmation assets from property of the estate. Under §348(f)(2), when a debtor converts a case from Chapter 13 to Chapter 7, property of the estate consists of property of the estate on the petition date remaining in the possession or control of the debtor. 11 U.S.C. § 348(f)(2). If a debtor converts a Chapter 13 case to Chapter 7 in bad faith, however, property of the estate includes property acquired after the petition date until the conversion date. 11 U.S.C. § 348(f)(2). Section 348(f)(2) assumes that estate property exists after confirmation. When a debtor tries and yet fails to complete a Chapter 13 plan and converts to Chapter 7 after confirmation, he is permitted to keep what had been estate property in the Chapter 13 case. However if the conversion is in bad faith, post-confirmation/pre-conversion property becomes part of the Chapter 7 estate. If a debtor who in good faith has been unable to complete his Chapter 13 plan is permitted to retain property received until the date of conversion, what justification is there for granting less favorable treatment to a debtor who continues to perform under his plan? Why does post-confirmation property not needed to perform under a Chapter 13 plan remain subject to the claims of pre-petition creditors? Perfect harmony of the relevant statutory provisions remains elusive.

The Court concurs in the observation in *In re Zeigler*, 136 B.R. 497 (Bankr. N.D. Ill. 1992) that "[r]emedial legislative drafting would more appropriately solve the conundrum over which . . . authorities have labored so long with varying results." *Id.* at 502, *quoted in In re Rangel*, 233 B.R. 191,198 (Bankr. Mass. 1999). Absent this direction and despite the flaws of the

reconciliation approach, I find that it best harmonizes § 1327(b) and § 1306(a). Therefore, I conclude that from the date a petition is filed until a plan is confirmed, all property acquired and all earnings received from services performed by a debtor are property of the estate under § 1306(a). At confirmation all property of the estate vests in the debtor under § 1327(b). After the plan is confirmed, property, including earnings, received by a debtor are property of the estate.

B. *Terms of the Plan and the Confirmation Order*

Before applying the reconciliation approach to the facts before the Court, the terms of the Plan and the Order confirming the Plan must be considered. The default provision in § 1327(b), which vests property of the estate in the debtor at confirmation, may be altered by a provision in a plan or confirmation order. A debtor may opt to postpone the vesting of property until the closure of the case or may delay vesting until some appropriate date between the date of plan confirmation and the date the case is closed.

Some courts have limited this option. The Bankruptcy Court for the Western District of Pennsylvania has adopted a standard form Chapter 13 plan that provides that property of the estate does not vest in a debtor upon confirmation of a plan, but is retained by the estate until the bankruptcy case is closed. *See Weisel v. Dominion Peoples Gas Co. (In re Weisel)*, 400 B.R. 457, 471 (Bankr. W.D. Pa. 2009) (citing Chapter 13 Plan, Local Form 10 at www.pawb.uscourts.gov/pdfs/localForms). By electing to retain all property in the estate that otherwise would vest in the debtor at confirmation, a debtor is able to obtain "the maximum, postconfirmation protection possible by expanding the definition of 'property of the estate' to the

12

fullest possible extent and in the process, [include] all postconfirmation income of the debtor, whether actually needed to fund the plan or not." *Id.*[8]

Under the Local Bankruptcy Rules for the Middle District of Pennsylvania in effect at the time Debtor's Plan was confirmed, a debtor could elect to have property of the estate vest in the debtor either at confirmation or upon closing of the case. Local Bankruptcy Form 3015-1 (November 1, 2007).[9] Paragraph six of the Plan simply states that upon confirmation of the Plan, "the Debtor's property shall revest in the Debtor." The Order confirming the Plan provides that "[t]itle to the Debtor's property shall revest in the Debtor upon confirmation of the Plan." Although the Plan and Order reference "Debtor's property," the Court construes this language to mean that Debtor's property, which became property of the estate on the petition filing date, revested in Debtor by virtue of the Order confirming the Plan. As discussed above, all property obtained after confirmation becomes property of the estate.

   *D. Whether Fritz's actions violated the automatic stay*

In her brief, Debtor urged the Court to adopt the reconciliation approach for the purpose of determining what constitutes property of the estate following plan confirmation in a Chapter 13 case. Although I agree that the reconciliation approach most effectively harmonizes § 1306(a) and § 1327(b), I interpret this approach differently than does Debtor.

---

[8]In *Weisel*, Judge Agresti observed that "a point worthy of consideration" was whether the language of the form plan was too broad and should include a provision that the property not needed to the fulfillment of the plan should be returned to the debtor. *Weisel*, 400 B.R. at 471 n. 13.

[9]Changes to made to Local Bankruptcy Form 3015-1, effective October 15, 2010, permit a debtor to elect to have property vest in the debtor upon confirmation or upon closure of the case, unless certain optional mortgage provisions are adopted. If these optional provisions are selected, property of the estate does not vest in a debtor until closure of the case.

The Property came into the estate when Debtor filed her petition. Under the terms of the Plan, all property of the estate vested in Debtor upon confirmation. Fritz filed a mechanic's lien against the Property after the Plan was confirmed. Accordingly, Fritz's actions against the Property did not violate the automatic stay, which was in force only as to property of the estate. The protection of the stay is not invoked simply because income generated by the Property may be estate property.[10] Debtor had the opportunity to retain the Property in the estate until the closure of the case and decided not to select this option. Under the vesting provision elected by Debtor, she has the ability to liquidate the property without the approval of the Court. With this right she must accept the concomitant right of post-confirmation creditors to pursue the Property in satisfaction of their claims.

The default judgment on the civil suit filed by Fritz against Debtor and Tindale for breach of contract and unjust enrichment also is at issue. The automatic stay only protects a debtor from the commencement or continuation of actions that could have been commenced before the case was filed, the enforcement of judgments obtained before the petition was filed, or the collection of claims that arose before the case was commenced. 11 U.S.C. § 362 (a)(1), (2), (5), and (6). Fritz's suit against Debtor and Tindale arose after Debtor's case was filed and involved a claim that arose after the petition date. Therefore, Fritz was not barred from commencing suit in state court to assert a post-petition claim against Debtor. However, Fritz may not enforce its judgment

---

[10] Although it is unclear in the record before the Court, it appears that the only income generated by operations on the Property are related to the bar and café operated by Tinsdale, which would be property of a non-debtor.

by executing against property acquired by Debtor after the Plan was confirmed, including post-confirmation wages and rental income, as these assets remain property of the estate.[11]

### III. Conclusion

For the reasons discussed above, the Court finds that unless otherwise provided in a Chapter 13 plan or confirmation order, property of the estate vests in a debtor upon confirmation of the plan. The estate is not extinguished by confirmation, but continues to exist. After confirmation the estate comprises plan payments made by a debtor to the trustee and all property acquired by the debtor until the case is closed. Neither Fritz's mechanic's lien action nor the civil suit commenced against Debtor in state court were actions against estate property. Therefore, neither suit was subject to the automatic stay. Under § 362(a)(3) and (4), the automatic stay prohibits Fritz from seeking to collect its claim from property acquired by Debtor after the Plan was confirmed without further order of this Court. At this juncture, the Court to declines to lift the automatic stay as to property of the estate.

An appropriate order follows.

**By the Court,**

_Mary D. France_
Chief Bankruptcy Judge

Date: October 15, 2010

---

[11] The Court notes that Debtor has alleged that Fritz may not pursue income from Tindale's business because all household income is committed to funding the Chapter 13 plan. No basis has been established for extending the protection of the automatic stay to non-estate property. Tindale's income is not and never was property of the estate. The codebtor stay under § 1301(a) is not applicable because as a post-petition creditor, Fritz is not a "creditor" as defined under § 101(10).

15